UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONIQUE BASS

    Plaintiff,

v.

EUGENE BOMBER, JOHANNA TODD, and
the CITY OF DETROIT, in their individual
and official capacities,

    Defendants.
_____/

Case No. 17-10531

Honorable Nancy G. Edmunds

OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [29]

On December 1, 2017, Defendant City of Detroit, Defendant Eugene Bomber, and Defendant Johanna Todd (collectively "Defendants") filed a Motion for Summary Judgment [29]. The Court held a hearing on this matter Wednesday, February 21, 2018. For the reasons stated below, Defendants' Motion for Summary Judgment [29] is GRANTED IN PART and DENIED IN PART.

**I.    Facts**

Defendant officers Bomber and Todd (collectively "Officers") were part of the "Operation Restore Order" team for the Detroit Police Department, which is tasked with the execution of already-issued warrants. Defendant Bomber states in his deposition "we would come in and there would be a stack of [warrants] -- pretty much a stack of known offenders that we would be going after for the day." (Def. Bomber Dep. 24:23-25; Dkt. 32-5, at 8; PgID 246.) He states, "[w]e would divvy them up no rhythm or reason, no who gets what, just grab some, and then make attempts to make an arrest. . . .one of the first things

that my partner, Johanna Todd, and I would do between one of us is re-run and make sure the LEIN[1] -- the warrant's still in LEIN."  (*Id*, at 9; PgID 247.)

On May 14, 2015, Operation Restore Order assigned the Defendant Officers to make two arrests at Plaintiff Monique Bass's ("Plaintiff") home, based on two outstanding warrants.  The first warrant was for Plaintiff's husband.  He was not home and the officers had no interaction with him.  The second felony warrant, for check forgery, was over fourteen years old and related to Plaintiff's alleged use of a bad check to pay for gas in Taylor, Michigan.  The name on the warrant was "Monique Wright."  Plaintiff's maiden name is Monique Wright.

The Officers arrived at Plaintiff's house and knocked on the door.  They spoke to Plaintiff through her storm door.  She confirmed her identity as "Monique Bass" and acknowledged her maiden name was "Wright."  The Officers informed her, they had a warrant for her arrest, for writing a bad check in Taylor, Michigan in November 2000.  Plaintiff explained she had not written a check for gas in Taylor, and that the warrant was not for her.  Plaintiff ultimately let the Officers into her home.  The Officers instructed Plaintiff to change into appropriate clothing for the arrest.  They allowed Plaintiff to call someone to stay with her three children, who were in the house at the time.  They instructed her to bring her ID and some money with her, but never checked the ID.  The Officers did not handcuff her leaving her home. The Officers executed the warrant without incident and they have no specific memory of the interaction.

---

[1] LEIN is a statewide law enforcement communication system that links law enforcement agencies to the Michigan State Police and federal criminal information databases.

For the duration of the interaction at Plaintiff's home, she insisted the warrant was for someone else. In addition to the warrant, Officers had a second piece of paper with them which included a copy of Plaintiff's photo ID ("ID Page"). The ID Page and warrant listed a Taylor address associated with Monique Wright. Plaintiff asserted then, and now, she has never lived in Taylor, and never been associated with the address on the warrant. The ID Page had at the bottom, a handwritten name "Monique Whyte" (instead of Wright) although the officers never asked for "Whyte" and only ever asked for "Monique Wright." Plaintiff told the Officers the photo was of her but reiterated often, she knew no "Monique Whyte."

A copy of the original warrant is not available to the Court, only the LEIN report. (Redacted LEIN Rep., Dkt. 32-2, PgID 205-06.) The LEIN report lists the name "Monique Wright" and describes an African-American female Plaintiff's age. Other information on the LEIN report does not match Plaintiff. Plaintiff's date of birth is November 1967, while the LEIN states a date of birth a few months earlier in April 1967. The LEIN report lists an incorrect social security number, describes Monique Wright as 5'6" and 220 pounds, while Plaintiff is in truth three inches taller and only 150 pounds. The LEIN report lists an address in Taylor, Michigan, where Plaintiff states she has never lived. The Officers explain in their deposition they do not typically note such discrepancies during an arrest. They additionally state, declarations of innocence or claimed mistaken identity are common and generally not given much credence.

The Officers took Plaintiff to the Detroit Detention Center, and only handcuffed her before exiting the vehicle at the facility. The Detroit Detention Center photographed her, took fingerprints, and processed her through booking. She remained in the female holding

area until her video arraignment hearing the following morning. After less than 48 hours in custody, at 1:00am on May 16, 2015, her daughter posted a $5,000 bond and Plaintiff returned home.

On May 29, 2015, Plaintiff appeared for a preliminary examination at the State of Michigan 36th District Court for the City of Detroit.  There, the Wayne County Prosecutor dropped the charges against Plaintiff and dismissed the case.  The prosecutor stated that the age of the case was a factor as was the "possibility [of] someone taking the defendant's identity and using it to commit this crime."  (Tr. May 29, 2015 Preliminary Examination; Dkt. 32-4 at 4, PgID 236.)  The prosecutor never stated that, in arresting Plaintiff, the Officers arrested the wrong person.

On February 17, 2017, Plaintiff filed a five count complaint against Defendants.  The five counts are: (1) a federal claim for violation of Plaintiff's Fourth Amendment rights due to unreasonable seizure without probable cause; (2) a state claim for false arrest and/or false imprisonment; (3) a state claim for malicious prosecution; (4) a federal claim for violation of Plaintiff's Fourth Amendment rights through malicious prosecution; and (5) *Monell* violations against Defendant City of Detroit.

Defendants filed this Motion for Summary Judgment on December 1, 2017. Defendants  state Plaintiff's arrest and detainment were based on a facially valid warrant, that any claims against the Officers should be dismissed because they are immune from tort liability since they acted in good faith, and the federal charges against them are due qualified immunity.  Defendants assert the claims against the City of Detroit should be dismissed since no custom, policy, practice and/or procedure is constitutionally arbitrary or deliberately indifferent, such that it is egregious to the point of "shocking the conscience."

4

## II. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence "in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences." *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.,* 477 F.3d 854, 861 (6th Cir. 2007). Yet, the nonmoving party may not rely on bare allegations or denials, but instead must support a claim of disputed facts by "citing to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Finally, "[a] mere scintilla of evidence is insufficient" to withstand a summary judgment motion; rather, "there must be evidence on which the jury could reasonably find for the non-moving party." *Smith Wholesale,* 477 F.3d at 861 (internal quotation marks and citation omitted).

## III. Analysis

### A. Unreasonable seizure

The Court first addresses Plaintiff's §1983 claim asserting unreasonable seizure in violation of the Fourth Amendment's requirements that all arrests be reasonable and made

5

on probable cause. The Officers argue that they are entitled to qualified immunity on this claim.

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A government official will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the action at issue was lawful; but if the officer of reasonable competence could disagree on this issue, immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity is an initial threshold question the court is required to rule on early in the proceeding so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity it is effectively lost if a case is erroneously permitted to go to trial." *Id*.

To determine qualified immunity a court must ask two questions. One is whether, taken *in the light most favorable to the plaintiff*, the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (emphasis added); *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010). If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity. *Saucier*, 533 U.S. at 201. If a violation could be made out, a second question is whether the right was clearly established in light of the specific context of the case, not

as a broad general proposition. *Id.* Under the doctrine of qualified immunity, an official will not be found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 808. The "clearly established" rights allegedly violated by the officials cannot be considered at an abstract level, but must be approached at a level of specificity: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Reasonableness" is a question of law to be decided by the trial court.

The Officers argue that they are entitled to qualified immunity because their arrest of Plaintiff was objectively reasonable and did not violate Plaintiff's constitutional rights. They emphasize that they were following the orders of their superiors, executing a valid arrest warrant by locating the individual named in the warrant. (Dkt. 29, at 16-17; PgID 140-41.) They stress their reasonableness, in believing that the arrest was lawful.

Plaintiff responds that, Defendants' arrest was not objectively reasonable, that the arrest lacked probable cause, and violated Plaintiff's Fourth Amendment rights. Plaintiff asserts the warrant was stale and included information that did not identify Plaintiff making the Officers' reliance on the flawed warrant unreasonable given the other information they

had available to them at the time.[2]  (Dkt. 32, at 22; PgID 192); (Dkt. 32, at 23; PgID 193.);  *See Berg v. County of Allegheny*, 219 F.3d 261, 273 (3d Cir. 2000).

It is "long understood that the Fourth Amendment's protection against 'unreasonable. . . .seizures' includes seizure of the person."  *California v. Hodari*, 499 U.S. 621, 624 (1991)(citing *Henry v. United States*, 361 U.S. 98, 100 (1959)).  To show an arrest violated a constitutional right, a plaintiff must "prove that the arresting officer lacked probable cause to arrest the plaintiff."  *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005)).  Probable cause is "reasonable ground for belief, supported by less than prima facie proof but more than mere suspicion."  *Sykes*, 625 F.3d at 306 (quoting *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005)).

Under federal law, "[p]robable cause is a 'practical nontechnical conspection' that deals with probabilities, not certainties and the 'factual and practical considerations of everyday life.' "  *Manley v. Paramount's Kings Island*, 299 Fed.Appx. 524, 528 (6th Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)).  "Police have probable cause to arrest a person when they have 'reasonably trustworthy information that is sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense based on the facts and circumstances within the police's knowledge at the moment in question.' "  *Id.* (quoting *Peet v. City of Detroit*, 502 F.3d 557, 563-64 (6th Cir. 2007)).

---

[2] Plaintiff repeatedly states that the warrant named someone other than Plaintiff. However, elsewhere the parties agree the warrant was issued for "Monique Wright" which is Plaintiff's correct maiden name.  Additionally, Plaintiff argues incorrectly the warrant had been altered, after its issuance, with handwritten information.  Even Plaintiff's deposition testimony states the handwritten information was not on the warrant itself but was instead on the ID Page.  (Test. Monique Bass; Dkt. 32-3, at 6; PgID 212.)

An officer's "initial probable cause determination must be founded on both the inculpatory and exculpatory evidence known to the arresting officer, and the officer cannot simply turn a blind eye toward potentially exculpatory evidence." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007)(internal quotation marks and citations omitted).

An officer "is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Everson v. Leis*, 556 F.3d 484, 499 (6th Cir. 2009) (citations omitted). "[I]f a factual dispute exists about the objective reasonableness of the officer's actions, a court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful." *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 214 (6th Cir. 2011). The question for the Court then is whether, viewing the facts in the light most favorable to Plaintiff, a reasonably prudent officer would have had sufficient ground to believe Plaintiff committed an offense, based on all the evidence available to the Officers, including the exculpatory evidence.

Here the Officers had a set of conflicting facts. On the one hand, the Officers had both the warrant itself and a valid LEIN report naming Plaintiff. The LEIN report provided to the Court, shows that at the time the Officers arrested Plaintiff the warrant remained facially valid, despite its considerable age. The warrant describes an individual the same sex, same race, and same age as Plaintiff. The Officer's taskforce sent the Officers to Plaintiff's address and provided a photo of Plaintiff, further indicating she was the proper

9

individual.[3]  "Arrest warrants in the hands of a police officer, unless facially invalid, are presumed valid."  *Fettes v. Hendershot*, 375 F. App'x 528, 532 (6th Cir. 2010)(unpublished).  Case law further indicates an officer may arrest an individual based exclusively on information in the LEIN system.  *Taggart v. Macomb County*, 587 F. Supp. 1080, 1080 (E.D. Mich. 1982); *see also Clark v. Oakland Cty.*, No. 08-14824, 2009 WL 5217682, at *4 (E.D. Mich. Dec. 29, 2009)(J. Cox) (citing *Taggart* for the proposition that "law enforcement officers are entitled to qualified immunity where, absent actual knowledge that an arrest warrant was no longer valid or in effect, those officers rely upon LEIN, in arresting a criminal defendant on an outstanding warrant").

On the other hand, the LEIN report here included substantially contradictory information.  "[An] apparently valid warrant does not render an officer immune from suit if his reliance on it is unreasonable in light of the relevant circumstances [, which include] other information that the officer possess or to which he has reasonable access."  *Berg*, 219 F.3d at 273.  Although reasonable mistakes can be made in ascertaining the correct identity of an arrestee without implicating the Fourth Amendment, where questions of fact exist, as to the reasonableness of the mistake, summary judgment should not be granted.  *Id.*  "No reasonable officer would believe that he is entitled knowingly to arrest the wrong man pursuant to a facially valid warrant the officer knows was issued for someone else.  Every officer knows, or should know, that he needs a warrant which correctly identified the arrestee, or probable cause, to arrest a particular individual."  *Lee v. Gregory*, 363 F.3d 931, 936 (9th Cir. 2004).  Police officers may not "rely on a judicially secured warrant for

---

[3]There is scant evidence on the record how the specific address and Plaintiff's photo came to the Officers before the arrest.

immunity from a § 1983 action for illegal search and seizure [when] the warrant is so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable." *Yancey v. Carroll County*, 876 F.2d 1238 (6th Cir. 1989).

The facts the Officers faced, taken in the light most favorable to Plaintiff, do not reach the standard of reasonableness. The Officers knew they had an extremely old warrant. The crime listed in the warrant, forgery, suggested the arrestee was not violent. The Officers found Plaintiff without effort, in her home surrounded by her three children. Plaintiff posed no immediate flight risk. Plaintiff insisted on her innocence and the warrant included considerable information that supported Plaintiff's assertions it was not her. Her birth date, social security number, address, weight and height were all readily verifiably different. Ultimately, the officers faced a compliant non-violent individual, who insisted there was an error, with a seriously flawed 14 year old warrant as their only justification for proceeding. Taking these facts in the light most favorable to Plaintiff, required a reasonably prudent officer to seek out additional information before proceeding with the arrest. The Supreme Court has made clear that the Fourth Amendment requires probable cause to arrest, *Beck v. Ohio*, 379 U.S. 89, 91 (1964), and the Sixth Circuit holds the right to be clearly established, *e.g., Donovan v. Thames*, 105 F.3d 291, 297-98 (6th Cir. 1997) and *Parsons v. City of Pontiac*, 533 F.3d 492, 504 (6th Cir. 2008). Qualified immunity is not appropriate.

This finding does not require a reasonable officer to investigate every claim of innocence. However given the sum of the circumstances in this particular instance and taking all facts in favor of Plaintiff, such additional investigation was necessary to establish probable cause. The Court concludes there remain genuine issue of material facts to preclude summary judgment in favor of Defendants. A reasonable juror could find the

11

Officers' choice to continue the arrest given the contradictory information available to them, violated Plaintiff's Fourth Amendment right to be free of unlawful seizure. As the Supreme Court has recognized, while "room must be allowed for some mistakes" in officers' determinations of probable cause, "the mistakes must be those of reasonable men, acting on facts leading sensibility to their conclusions of probability." *Brinegar v. United States*, 338 U.S. 160, 176 (1949).

**B.     Malicious Prosecution**

Plaintiff's second §1983 claim is for malicious prosecution. To make a prima facie case for malicious prosecution under 42 U.S.C. §1983, Plaintiff must show that (1) a criminal prosecution was initiated against her and that Defendants made, influenced, or participated in the prosecution decision; (2) there was no probable cause to support the charges; (3) as a result of the legal proceedings, Plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceedings ended in Plaintiff's favor. *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017). Plaintiff must also make "an 'effort to identify what that false and misleading information was.' " *Bickerstaff v. Lucarelli*, 830 F.3d 388, 398 (6th Cir. 2016) (quoting *Meeks v. Larsen*, 611 Fed.Appx. 277, 282 (6th Cir. 2015)).

Plaintiff's case fails on the first and third elements. Even taking all facts in the light most favorable to Plaintiff, there is no evidence indicating Defendants, made, influenced, or participated in the prosecution decision. The alleged crime took place in November 2000, and the warrant was entered into LEIN in January 2001. The Officers had not even entered the police academy at this time. Officer Bomber attended the police academy in 2005. (Dkt. 32-5, at 5; PgID 243.) Officer Todd attended in 2008. (Dkt. 32-6, at 4; PgID

12

272.) There is similarly no evidence that Plaintiff experienced a deprivation of liberty apart from her initial unremarkable seizure and arrest.

Taking all facts in the light most favorable to Plaintiff, at least two of the elements for malicious prosecution have not been adequately argued or even pled. This Court awards summary judgment for Defendants on this claim.

**C.     State Law Claims**

Plaintiff raises two intentional state tort claims against Defendants. Plaintiff asserts in Count II, a state false arrest/false imprisonment claim, that the Defendants caused the arrest and/or imprisonment of Plaintiff without any legal justification and/or probable cause. (Pl. Compl., Dkt. 1 at 6.) Plaintiff alleges in Count III, a state malicious prosecution claim that Defendants caused/instituted criminal proceedings against Plaintiff, without probable cause that the proceedings against her could succeed. (Pl Compl., Dkt. 1 at 7.)

The Officers are not liable for these two state-law intentional torts. Under Michigan law, lower-ranking governmental employees or officials, such as police officers, are immune from intentional torts, such as false imprisonment and malicious prosecution, unless malicious intent can be shown. In practice, these intentional torts, contain the same elements as in the federal claims with one additional requirement, namely that the action was undertaken with subjective malicious intent. *Matthews v. Blue Cross & Blue Shield of Mich.*, 572 N.W.2d 603, 610 (1998); *see also Sykes*, 625 F.3d at 309 (holding that unlike a state tort claim, federal law does not "require[] that a plaintiff demonstrate 'malice' in order to prevail on a Fourth Amendment claim for malicious prosecution").   "[T]he mere existence of probable cause. . . .is not the proper inquiry. A police officer would be entitled to immunity. . . .if he acted in good faith and honestly believe that he had probable cause

13

to arrest, even if he later learned that he was mistaken." *Odom v. Wayne Cty.*, 482 Mich. 459, 481 (2008). In order for these torts to be successful, the Officers' subjective intent must be established, otherwise they are entitled to immunity.

The Michigan Supreme Court "has described a lack of good faith as 'malicious intent, capricious action or corrupt conduct' or 'willful and corrupt misconduct.' " *Odom*, 760 N.W.2d at 225 (internal citations omitted). "[W]illful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Id.* (quoting *Burnett v. City of Adrian*, 326 N.W.2d 810, 812 (1982)).

Taking the facts in the light most favorable to Plaintiff, there is no evidence the Officers acted willfully to arrest or prosecute someone they knew to be innocent. The Court concludes, there is no evidence the Officers acted with malice. Defendants arrested a woman with the same name as a valid, if flawed warrant. Despite Plaintiff's claims of innocence, the Officers did not believe she was telling the truth. The Officers treated Plaintiff with respect and truthfulness during the arrest. The available evidence does not support a finding that Defendants subjectively acted with malicious intent in effectuating Plaintiff's arrest. *See Simmons v. Greektown Casino LLC*, No. 286845, 2009 WL 3051471, at *2 (Mich. Ct. App. Sept. 24, 2009) ("A police officer is entitled to immunity [under Michigan law] if he or she acted in good faith and honestly believed that there was probable cause to arrest, even if he or she actually lacked probable cause").

In addition, as discussed above, with regard to Plaintiff's malicious prosecution tort claim, there is no evidence that Defendants made, influenced, or participated in the decision to prosecute Plaintiff, nor that her confinement exceeded the initial seizure. For

14

these reasons, the Court grants Defendants summary judgment motion to dismiss these state intentional tort claims.

D. *Monell* Claim

Defendant City of Detroit, seeks summary judgment in its favor, with respect to Plaintiff's failure-to-train claim. Local governments and municipalities are responsible for their own illegal acts but are not vicariously liable for their employees' actions. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). "Under §1983. . . .a city [is] liable for a constitutional tort 'if the injury is caused by a municipal custom or policy, or if the city's failure to train employees amounts to deliberate indifference to constitutional rights.' " *Baily v. City of Ann Arbor*, 860 F. 3d 382, 388 (6th Cir. 2017)(quoting *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994 (6th Cir. 2017)); *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690 (1978).

To succeed on a failure-to-train claim, Plaintiff must show (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006); *Berry v. City of Detroit*, 25 F.3d 1342, 1346 (6th Cir. 1994).

Taking all facts in favor of Plaintiff, there is no evidence suggesting the City of Detroit maintains an unconstitutional policy. Plaintiff asserts City of Detroit maintains a widespread practice of failing to provide "proper ways of making arrests, carrying out arrest warrants or verifying warrants." (Pl. Resp. Mt. Sum. J., Dkt. 32, at 31; PgID 201.) However, beyond the bare assertion, Plaintiff has made no effort to demonstrate a pattern of unconstitutional conduct. A plaintiff could show "prior instances of unconstitutional conduct demonstrating

15

that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Plinton v. Cty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *First v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)).  Plaintiff makes no such showing.

Alternatively a plaintiff could establish deliberate indifference based on "a single violation of federal rights accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Id.* (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)).  For a municipality to be held liable based on a single violation the record must show "a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Hays v. Jefferson Cty.*, 668 F.2d 869, 874 (6th Cir. 1982).  There is no evidence, beyond the Officers' own conduct, that their training was deficient.  "[P]lainly, adequately trained officers occasionally make mistakes; the fact that they do so says little about the training program or the legal basis for holding the city liable." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989).  "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city could have done to prevent the unfortunate incident." *Id.* at 392.

Plaintiff's only evidence regarding the Officers' training addresses the date they received their training.  (Dkt. 32, at 31; PgID 201.)  Plaintiff provides no evidence regarding the substance, format, or duration of the training they did receive.  *See Miller v. Calhoun Cty.*, 408 F. 3d 803, 816 (6th Cir. 2005) (affirming summary judgment against plaintiff on

16

a failure-to-train claim because the plaintiff failed to offer 'evidence beyond the facts of this case tending to show that the [municipality's] training and staffing policies were inadequate"). Based on Plaintiff's single arrest, a jury could not reasonably conclude that the training was so "reckless or grossly negligent that future police misconduct is almost inevitable." *Hays*, 668 F.2d at 874.

Defendant's Motion for Summary Judgment on the Count V *Monell* claim is GRANTED.

## IV. Conclusion

For the reasons thus stated, the Court GRANTS Defendant's Motion for Summary Judgment as to Counts II-V. For the reasons stated above, the Court DENIES Defendant Bomber and Defendant Todd's Motion for Summary Judgment (Dkt. 29) as to Count I for violation of the Fourth Amendment 42 U.S.C. § 1983 unreasonable seizure without probable cause claim.

IT IS SO ORDERED.

      s/Nancy G. Edmunds
              Nancy G. Edmunds
              United States District Judge

Dated: April 2, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 2, 2018, by electronic and/or ordinary mail.

      s/Lisa Bartlett
              Case Manager